IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| UNITES STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No.: 17-10104-EFM |
| | ) |
| MARIO AILON-AILON, | ) |
| | ) |
| *Defendant*. | ) |

## **ORDER**

The defendant Mario Ailon-Ailon was indicted by the grand jury on one count of being an alien unlawfully in the United States, who after having been previously deported and removed from the United States voluntarily re-entered the United States without permission. The Magistrate Judge denied the government's motion for detention on July 28, 2017, but stayed the order pending appeal to this Court. The government filed its motion to revoke release on bond the same day. The Court heard the motion on August 1, 2017.

The government bears the burden of proving by a preponderance of the evidence that the defendant is a flight risk.[1] The Court makes its determination in consideration of the factors set forth at 18 U.S.C. § 3142(g).

The Court considered evidence by proffer at the hearing. The Court finds that the defendant has resided in Dodge City, Kansas for seven years, where he lives with his wife and two children, along with three step-children. His prior criminal record consists of a few speeding citations as well as several charges for operating a motor vehicle without a license. Of more

---

[1] The government is not relying on the risk of danger to the community, so those matters need not be discussed.

concern are a driving under the influence charge, and a misdemeanor battery charge. Based solely on these findings, the Court would not conclude that the defendant was at risk for flight (for non-appearance in court as required).

However, government principally relied upon the fact that the United States Immigration and Customs Enforcement (ICE) has lodged an immigration detainer with the United States Marshals Service seeking custody of the defendant should he be released from the Marshal's custody. Moreover, the United States proffered that the defendant's prior order of removal from the United States to his native country of Guatemala has been reinstated, and the United States argued that this reinstated order meant that if ICE obtained custody of the defendant, it would be legally obligated to effect his timely removal from the United States, pursuant to 8 U.S.C. § 1231(a).

The defendant argued that an ICE detainer is not an element under the law which may be considered in a detention hearing, but that argument rather misses the point. This question turns on whether, upon obtaining custody of the defendant, ICE would be more likely than not to remove him pursuant to the reinstated removal order, and if so whether such likely removal (though involuntary on the defendant's part) could be considered as a risk of flight or non-appearance.

Defendant argued that ICE wouldn't necessarily have to remove the defendant, and that other scenarios were possible, citing primarily the Ninth Circuit case of *United States v. Santos-Flores*.[2] Though defendant was quite adept at avoiding this precise issue, it seems beyond peradventure that, more likely than not (that is, by a preponderance of the evidence), that is precisely what would happen.

---

[2] 794 F.3d 1088 (9th Cir. 2015).

Defendant next argues that his involuntary removal from the country by ICE should not be considered as his non-appearance, because such non-appearance would lack any personal volition on his part. As a policy matter, defendant argued, if the United States government, though the Department of Justice, wanted defendant present for prosecution, it should not be heard to complain of the defendant's non-appearance due solely to the actions of the United States government, through the Department of Homeland Security Immigration and Customs Enforcement. This policy argument is noted in the *Santos-Flores* case, and it makes sense to this Court.

It is, however, rejected by the Tenth Circuit in *United States v. Vasquez*.[3] That per curiam decision (not designated for publication) determined that where a defendant had not only an ICE detainer, but was also the subject of a reinstated removal order, his possible scenarios whereby he might be released from ICE custody, thus permitting his physical appearance in the district court as required, lacked the requisite evidence they would occur.[4] Because Vasquez could not show that he was not likely to flee – that he was likely to appear in court when required – the Tenth Circuit denied his release. It is clear that this opinion considers deportation as "flight" chargeable to the defendant under the release standards.

This Court finds by a preponderance of the evidence that if defendant were ordered released from the custody of the United States Marshal, he would be released to ICE who would pursuant to the reinstated removal order effect his timely removal from this country. This Court concludes that, under the *Vasquez* decision, such removal should be considered flight, in that defendant would therefore not appear in this court as required. Therefore, the Court concludes

---

[3] 413 Fed.Appx. 42 (10th Cir. 2011).
[4] Vasquez sought release post-plea, pre-sentencing, and so the pertinent statute there was 18 U.S.C. § 3143. For these purposes, however, that is a difference without a distinction.

3

that the United States has met its burden that the defendant is a flight risk, and reverses the Magistrate Judge's decision releasing him. Defendant is ordered detained.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Revoke Release on Bond, Doc. 10, is GRANTED and defendant is ordered detained.

IT IS SO ORDERED.

Date this 2nd day of August, 2017.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE